## BURROW v. MARCEAU.

(Supreme Court, Appellate Division, First Department. March 6, 1908.)

1. TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION—USE OF TRADE-NAME—TRANSFER.

An executor sold to plaintiff's assignor the photograph business of the testator, with the right to use in connection therewith the well-known trade-name "Sarony," the surname of the testator and likewise of the executor. Thereafter M., a photographer, organized a corporation to engage in the same business in the same locality, under the name of "Otto Sarony Company, Photographers," acquiring the right to use such name from the executor in consideration of one share of stock therein; substantially all of the balance of the stock being owned by M. *Held* unfair competition in business, constituting a fraud on plaintiff, for which he was entitled to an injunction against the use of such name.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46; Trade-Marks and Trade-Names, §§ 78–88.]

2. SAME—INJUNCTION AGAINST NAME—PARTIES.

M. was a proper party defendant to an action against such corporation to enjoin the use of such name.

Appeal from Special Term.

Action by Ernest M. Burrow against Theodore Marceau and others. Defendant Marceau demurred to the complaint. From an interlocutory judgment sustaining the demurrer, plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and SCOTT, JJ.

Yorke Allen, for appellant.

Maurice Goodman, for respondent.

INGRAHAM, J. The complaint alleges that one Napoleon Sarony prior to the 9th of November, 1896, was engaged in the business, under the trade-name of "Sarony," of taking and making photographic por-

traits for compensation, and that his work became widely and most favorably known in the community, and enjoyed the highest artistic reputation; that in consequence thereof the said Sarony had established an extensive and highly profitable patronage and business from the public at large of very great commercial value, and the trade-name "Sarony" had become known far and wide as the symbol of photographic portraiture by said Napoleon Sarony, and was widely and extensively advertised; that on the 9th day of November, 1896, the said Sarony died; that his last will and testament was admitted to probate by the surrogate and letters testamentary were issued to his executor, Otto Sarony; that the said Otto Sarony, as executor of the last will and testament of Napoleon Sarony, on or about the 7th day of October, 1898, for a valuable consideration, sold to the plaintiff's assignor this photographic business established by the said Napoleon Sarony, together with the trade-mark "Sarony" and the good will of said photographic business, and that the assignee duly filed the certificate required by law to enable him to lawfully transact said business under said trade-name of "Sarony," and thereafter he continued said business under that name until he assigned his right to the plaintiff, who, since the assignment thereof, has continued the same business under the same name; that subsequently Otto Sarony, the executor of Napoleon Sarony, and who as executor had transferred this trade-mark and business and the right to use the name "Sarony" to the plaintiff's assignor, entered into an agreement with the defendant Marceau, who was then engaged in the business of taking, making, and vending photographic portraits in the city of New York, whereby said Otto Sarony, in consideration of the promise by the said Marceau to issue to him one share of stock of a corporation to be organized by said Marceau for the carrying on of the business of photographic portraiture for his own benefit, covenanted to allow the defendant Marceau to bestow upon such corporation all or any part of his said name "Sarony," and that thereupon the said Marceau organized the defendant corporation, the "Otto Sarony Company, Photographers," under the laws of the state of New York, and issued to said Otto Sarony said one share of stock of the corporation, and to himself, the said Theodore Marceau, all or substantially all of the balance of stock of the said corporation; that subsequently the defendant Marceau caused the defendant corporation to engage in the business of taking and making photographic portraits in the immediate vicinity of the plaintiff's business under the name of "Otto Sarony Company, Photographers"; that such use by the defendant corporation of the word "Sarony" in connection with the title and business of the said defendant corporation is unlawful, and calculated to deceive the public, and especially persons desiring photographic portraiture, and actually has misled and does and will, if persisted in, continue to mislead the public and large numbers of persons to patronize the defendant company in the belief that they are patronizing the successor to the business of Napoleon Sarony. The relief demanded is that the defendant be enjoined and restrained from in any way making use of the word "Sarony," and taking, making, or vending photographic portraits under any name with the word "Sarony" therein in-

cluded, and from carrying on or doing any photographic business under the name "Sarony."

I think this complaint sets forth a good cause of action, based, as it is, upon unfair competition in business. There can be no question, under these facts alleged, but that Napoleon Sarony when he died had established a business to which there was a good will attached, which included the use of the name "Sarony," and which became an asset of his estate. His executor, Otto Sarony, transferred that to the plaintiff's assignor, and the estate received, it must be assumed, the value of the use of the name "Sarony" as a trade-mark. The plaintiff, therefore, acquired the property right to use the name "Sarony" as a part of his business. It was a right attached to his business which he had purchased, and he is entitled to be protected in the enjoyment of that property as against any one using the name "Sarony" without authority. The defendant Marceau then procured from the executor of Napoleon Sarony an agreement authorizing him to use the name "Sarony" in the business of making photographs. The object of this transaction is perfectly apparent. It was not an attempt of a man to transact business in his own name, or to transfer to another the good will of an established business. Otto Sarony did not intend to go into business using his own name, and defendant Marceau was in the photographic business. Marceau, not satisfied with doing business under his own name, wished to conduct it under the name of "Sarony," and the only object he could have was thus to secure some of the business of the plaintiff. The executor of Napoleon Sarony, having got all he could from the plaintiff's assignor for the use of the name, seemed to have no objection to selling again to another the same right, which would necessarily seriously impair or tend to destroy what he had sold as executor to the plaintiff's assignor; and the desire of the defendant Marceau to acquire the right to use the name could only be for the purpose of getting away from the plaintiff or his assignor the benefit which had accrued to them by reason of the purchase of the right to use the name of "Sarony" as taker or maker of photographic portraits. "Sarony" meant nothing except so far as it represented the reputation or skill and artistic merit of the business transacted under that name. It was a fraud if the defendant represented that this company was either the successor of the business and methods established by Napoleon Sarony, or that any member of the Sarony family had any connection with it. It was a fraud upon the plaintiff, in that by the use of the name "Sarony" it indicated that the Sarony, who had established the business known to the public as Sarony's photographic establishment, was connected with it, and it was a fraud for Otto Sarony to make such an agreement with the defendant Marceau when he had transferred the right to use the name of "Sarony" with the business established by Napoleon Sarony, and had received consideration therefor. As I understand it, there is no hard and fast rule by which it can be determined when the court will interfere by injunction to prevent what is practically a fraud upon a person engaged in business by the unfair methods of competition. Each case must depend upon its own facts, but, where it is clearly established that an attempt is being made by one person to get the business of another by any means that in-

volves fraud or deceit, a court of equity will protect the honest trader and restrain a dishonest one from carrying out his scheme. I think the defendant Marceau is a proper party defendant. He made the contract with Otto Sarony. He organized the company and received substantially all its capital stock, and now, as president of the company, he is actually carrying on the business. It is proper to enjoin him from acting under the agreement that he obtained from Otto Sarony, as well as the company which is also acting under that contract.

I think, therefore, the judgment should be reversed, with costs, the demurrer overruled, with costs, with leave to the defendant to withdraw the demurrer and to answer. All concur.