Sylvie Montegut and Jeanne D'Etreillis, Doing Business as Boue Soeurs, Respondents, *v.* Hickson, Inc., Appellant.

First Department, May 4, 1917.

**Equity — injunction — obtaining trade or business by fraud and deception.**

Where it is clearly established that an attempt is being made by one person to get the business of another by any means that involves fraud or deceit, a court of equity will protect the honest trader and restrain a dishonest one from carrying out his scheme.

Hence, where a dealer in gowns procures a person to misrepresent herself as a private customer and purchase gowns from another dealer of exclusive designs, and removes therefrom the trade mark and exhibits such gowns and copies thereof to its customers, representing them to be its own importation, not created by the dealer from which the original was purchased, it should be enjoined from exhibiting and selling such gowns.

Such dealer, however, has a legal right to copy and to sell as its own creations the exclusive models designed by another, if the models or an inspection thereof are procured by fair means.

CLARKE, P. J., and DAVIS, J., dissented, with opinion.

APPEAL by the defendant, Hickson, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of December, 1916, granting plaintiffs' motion for judgment on the pleadings consisting of the complaint and a demurrer thereto.

*Sidney J. Loeb,* for the appellant.

*Bert Cohen,* for the respondents.

SHEARN, J.:

In the case of *Burrow* v. *Marceau* (124 App. Div. 665) Mr. Justice INGRAHAM, writing for a unanimous court, said: "There is no hard and fast rule by which it can be determined when the court will interfere by injunction to prevent what is practically a fraud upon a person engaged in business by the unfair methods of competition. Each case must depend upon its own facts, but where it is clearly established that an attempt is being made by one person to get the business of another by any means that involves fraud or deceit, a court of equity will protect the honest trader and restrain a dishonest one from carrying out his scheme." Although the facts in that case are wholly dissimilar from the facts in the case at bar, the principle thus broadly and tersely stated is one which should be decisive of this case. In the opinion of Mr. Justice DAVIS it is said: "Nor do I think that the deception by means of which the defendant obtained possession of plaintiffs' models affects the question." To my mind, under the principle correctly laid down in the *Burrow Case* (*supra*), and under the law of unfair competition as generally understood, the deception employed is the very heart of the matter. It must be conceded that if the defendant obtained possession of plaintiffs' models by bribing one of plaintiffs' employees to furnish surreptitiously an opportunity to copy them, the

means employed would constitute unfair trade. (*Tabor* v. *Hoffman,* 118 N. Y. 31.) While the case supposed involves a violation of the duties growing out of the relation of master and servant, the resort to bribery is not condemned because it causes the servant to violate his duty to his master but because it is an unfair and dishonest trade practice. I agree that the defendant has a legal right to copy and to sell as its own creations the exclusive models designed by the plaintiffs if the models or an inspection of the models are procured by fair means, but I deny the right of the defendant to obtain plaintiffs' trade by resort to fraud and deception practiced upon the plaintiffs at the instigation and hiring of the defendant. Paraphrasing the opinion of Judge VANN in *Tabor* v. *Hoffman* (*supra*), because an inspection of or possession of plaintiffs' models may be possible by fair means, it does not justify obtaining the same by unfair means. Here the defendant not only obtained possession of the exclusive artistic creations of the plaintiffs by fraud and deception, but physically removed therefrom the plaintiffs' trade mark, exhibited the gowns to its customers and represented them to be its own importation created by persons other than the plaintiffs. The natural and intended result was to divert from the plaintiffs and appropriate by the defendant trade and custom that would otherwise go to the plaintiffs, for if the styles were popular and could only be obtained at the plaintiffs' establishment the defendant could only obtain the custom of persons seeking these styles by obtaining the models and copying them. For this express purpose, and knowing that plaintiffs would only sell copies of these models to *bona fide* customers purchasing for personal use, the defendant conceived and put into effect its scheme of imposition and fraud upon the plaintiffs by procuring a person to misrepresent herself as a private customer, buying the gowns to wear herself, and thus misled and deceived the plaintiffs into turning over their models to the defendant. We are not concerned with the fraud practiced by the defendant on its own customers except in so far as it tends to brand the entire transaction and trade methods of the defendant as dishonest and fraudulent. While the relief asked for in the complaint is too broad, in my opinion plaintiffs are entitled to a judgment, assuming the

allegations in the complaint to be true, enjoining the defendant from exhibiting and selling gowns and capes which are copies of those obtained from the plaintiffs by means of fraud and deception, and, therefore, the order granting plaintiffs' motion for judgment on the pleadings should be affirmed, with ten dollars costs and disbursements, with leave to defendant to withdraw the demurrer and to answer upon payment of costs in this court and in the court below.

LAUGHLIN and DOWLING, JJ., concurred; CLARKE, P. J., and DAVIS, J., dissented.

DAVIS, J. (dissenting):

The defendant demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. Upon these pleadings the court granted plaintiffs' motion for judgment.

The complaint alleges that the plaintiffs are engaged in business as high-grade dressmakers at 13 West Fifty-sixth street, New York city, and at 9 Rue de la Paix, Paris, under the name of "Boue Soeurs," with the most exclusive clientele; that the establishment of the plaintiffs has an international and enviable reputation for the creation of exclusive models and styles; that these models and styles are created in Paris at great expense and after much experimenting; that they are brought by plaintiffs to their establishment in New York city, where they exhibit them to their patrons as their own creations and exclusive models; that these models consist of gowns, capes and apparel and bear the mark "Boue Soeurs," thereby insuring exclusiveness of design and the highest quality of material.

The complaint proceeds to allege that defendant is a dealer in gowns at 661 Fifth avenue, New York city, and that the defendant, well knowing the reputation of the plaintiffs for creating exclusive models which become the standard for prevailing styles, for the purpose of unlawfully securing to itself the benefits and advantages incident to the exhibition and sale of the artistic creations of the plaintiffs by palming off the same as its own importations, in October, 1916, caused certain

of the plaintiffs' own exclusive gowns and a cape to be purchased from the plaintiffs by a lady who represented herself to be a private customer, buying the gowns for her personal use, which representations were believed by the plaintiffs to be true and relied upon by them although the said representations were false; that the said gowns and cape were delivered to the said purchaser, who in turn delivered them to the defendant, Hickson, Inc.; that thereafter the defendant, Hickson, Inc., took out from said gowns the marks "Boue Soeurs" and exhibited and are exhibiting the gowns and cape, and copies thereof, to its customers, and represented and are representing the gowns and cape to be their own importations and to be the creations of certain alleged dressmakers in Paris, France, other than the plaintiffs, and said Hickson, Inc., exhibited and offered to sell and is continuing to exhibit and offering to sell to its customers said gowns and cape and copies thereof, thereby deceiving the public, injuring the reputation of the plaintiffs' firm, causing it to lose sales and making customers of the firm suspicious of plaintiffs' representations, all to the plaintiffs' great damage.

Plaintiffs then demand judgment restraining defendant from exhibiting and selling said gowns and cape or copies thereof and from making any representation as to the origin thereof except that they are the creation and styles of the plaintiffs and for $25,000 damages.

The plaintiffs claim that the defendant is engaging in unfair competition and dishonest trade methods causing direct injury to plaintiffs' business.

The question of patent or copyright is not involved in this case, as the plaintiffs' models are neither copyrighted nor patented.

The plaintiffs ask the court to enjoin their competitor, the defendant, from exhibiting and selling those models and designs and copies thereof as its own productions, it having obtained possession of them for that purpose by false representations as to the purpose for which it bought them.

This is not the usual case of misrepresentation where a person offers for sale his own creations under the marks or labels of another. Here the defendant removed from the purchased

models every mark serving to identify them as those of the plaintiffs. It is a case of copying and selling the creations of the plaintiffs by representing them to be the product of the defendant's own invention or that of persons other than the plaintiffs.

We may assume that the plaintiffs sell their models and copies thereof to the public generally, endeavoring as far as possible to avoid selling them to their competitors. When once sold the plaintiffs retained no right to control the use to be made of them. If the purchaser chooses to represent himself as the creator of the models and sell copies of them to the public, it is an act which a court of equity will not restrain. While the defendant's act of appropriating the ideas and work of the plaintiffs may be unreservedly condemned in its moral aspect, it is not an act which the courts have thus far regarded as unfair competition. Nor do I think that the deception by means of which the defendant obtained possession of plaintiffs' models affects the question.

If the charge of deception as alleged be true, and we assume it to be true for the purpose of this appeal, while it reflects seriously upon the character of the defendant as a merchant, the deception practiced does not affect its right to full control over the models it bought, including the selling of copies, the suppressing of the fact that they are the creations of the plaintiffs and the holding of them out as the product of the defendant's own taste and experience.

For these reasons the order appealed from should be reversed and the motion for judgment on the pleadings denied.

CLARKE, P. J., concurred.

Order affirmed, with ten dollars costs and disbursements, with leave to defendant to withdraw demurrer and to answer on payment of costs.